UNIVERSAL C. I. T. CREDIT CORPORATION, peticionaria, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE SAN JUAN, HON. FRANCISCO TORRES AGUIAR, JUEZ, demandado; JOSÉ M. GATELL, interventor.

Número 2035.
*Sometido:* 1 de marzo de 1954. *Resuelto:* 8 de diciembre de 1954.

*Jorge M. Morales* y *Ramón L. Nevares,* abogados de la peticionaria; *Francisco Ponsa Feliú, Luis Blanco Lugo* e *Isaías Rodríguez Moreno,* abogados del interventor, demandado en el pleito principal.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del Tribunal.

Mediante contrato de venta condicional otorgado el 29 de mayo de 1952, José M. Gatell adquirió de la Hull-Dobbs Co. of Puerto Rico un automóvil "Ford V8 Panel Delivery," siendo el contrato cedido por la vendedora a la aquí peticionaria, Universal C.I.T. Credit Corporation.[1] En vista de que Gatell no pagó con puntualidad algunos de los plazos convenidos, la cesionaria acudió en 20 de febrero de 1953 ante el Tribunal de Distrito de Puerto Rico, Sala de San Juan, con una *declaración jurada* en que, luego de hacer constar el otorgamiento del contrato y la cesión del mismo por la vendedora, así como que el demandado no satisfizo los plazos correspondientes a los meses de diciembre de 1952 y enero y febrero de 1953, que de acuerdo con el contrato la totalidad del precio aplazado se consideraba vencida y que la cantidad en descubierto lo era la de $1,488.27, solicitó del tribunal la reposesión

---

[1] En adelante nos referiremos a ella como la cesionaria o como la Universal.

del vehículo en cuestión. Esa declaración estuvo acompañada de copia simple del contrato suscrito por las partes. (²) Simultáneamente se solicitó el aseguramiento de la sentencia que en su día pudiera dictarse y el Tribunal de Distrito así lo decretó, previa prestación de una fianza por la suma de $1,500, que fué prestada en su oportunidad. Más tarde, y a instancias de la propia cesionaria, el Tribunal de Distrito trasladó el procedimiento al Tribunal Superior de Puerto Rico, Sala de San Juan.

Luego de citado el comprador y habiéndose elevado ya los autos al Tribunal Superior, aquél contestó aceptando la cesión del contrato, negando el incumplimiento del mismo y alegando como materia de defensa que no ha satisfecho los pagos a que se comprometió debido a que desde el día en que se le entregó el vehículo objeto del contrato, el mismo ha estado fuera de uso la mayor parte del tiempo, con un desperfecto en su mecanismo que nunca pudo ser corregido por los mecánicos y empleados de la demandante; alegando como defensas especiales que al recibir el vehículo notó que el mismo tenía ciertos desperfectos mecánicos, lo que comunicó inmediatamente a la vendedora y ésta se comprometió con él a corregir tales defectos así como a devolverle el dinero pagado o a entregarle un vehículo nuevo en perfectas condiciones, en caso de que los susodichos desperfectos no pudieran corregirse; que él llevó el vehículo objeto del contrato más de 8 veces a los talleres de reparación de la vendedora y los mecánicos de ésta no pudie-

---

(²) En el contrato de venta condicional figuran entre otras las siguientes cláusulas:

"3. El comprador ha recibido del vendedor en el día de hoy el vehículo, el cual ha sido examinado y probado por el comprador y aceptado a su entera satisfacción.

"(a) El vehículo queda de la propiedad absoluta del vendedor hasta que el comprador haya satisfecho totalmente el importe de los plazos estipulados. . . .

"(f) Si el comprador dejare de pagar cualquiera de los plazos estipulados en este contrato . . . entonces el vendedor podrá tomar posesión del vehículo . . .

"(1) Este contrato podrá ser cedido o traspasado por el vendedor con o sin aviso al comprador."

ron corregir los desperfectos, y le informaron que ello no era posible; que entonces solicitó la entrega de su dinero u otro vehículo y a ello se negó la demandante (sic) [3]; y que el día que el vehículo del demandado fué embargado en aseguramiento de sentencia, el mismo se encontraba en los talleres de reparación de la demandante. Por vía de "reconvención" alegó asimismo que la demandante reconvencionada no ha cumplido las obligaciones asumidas bajo el contrato, causando con ello daños al demandado por valor de $3,000. Solicitó se decretara la resolución del contrato de venta condicional; se ordenara a la demandante que entregara y devolviera al demandado el precio pagado y los abonos efectuados por éste; y que se condenara a la demandante a satisfacerle la suma de $3,000 por concepto de daños y perjuicios, más intereses, costas y honorarios de abogados.

La Universal contestó la reconvención, alegando que los hechos en ella expuestos no constituyen una causa de acción, y negándolos. También solicitó se eliminara de la contestación del demandado la aludida reconvención porque:

"(a) Dicha 'contrademanda' [4] constituye exclusivamente una reclamación por daños causados al señor Gatell por parte de Hull-Dobbs Co. of P. R., quien no es parte en el caso, por motivo a que dicha Hull-Dobbs Co. of P. R. no había cumplido un convenio o contrato con el señor Gatell y cuyo convenio o contrato no tiene que ver nada con el contrato de venta condicional envuelto en la acción de reposesión; todo lo cual se desprende de las alegaciones de dicha contrademanda.

"(b) Porque dentro del procedimiento sumario de Reposesión de Bienes Muebles incoado de acuerdo con lo dispuesto en la Ley de Ventas Condicionales no se puede ventilar una causa de acción por daños y perjuicios.

---

[3] Al hacer mención de la "demandante" no sabemos exactamente si el demandado deseaba referirse a la cesionaria, que era la entidad que solicitaba la reposesión del vehículo, o a la cedente, que fué la que le vendió el mismo y la que según él le había hecho las promesas a que se refiere en su contestación.

[4] La reclamación que aparece en la contestación del demandado es calificada indistintamente por las partes como reconvención o como contrademanda. Cf. The Juncos Central Co. v. Rodríguez, 16 D.P.R. 302, 308.

"(c) Que estando dicha Reconvención dirigida contra Hull-Dobbs Co. of P. R. y no siendo parte en el pleito Hull-Dobbs Co. of P. R., la demandante Universal C. I. T. Credit Corp. no puede responder de las acciones y contratos existentes entre el señor Gatell y Hull-Dobbs Co. of P. R., en cuyos contratos la aquí peticionaria no fué parte, y por lo tanto no viene obligada a responderle al señor Gatell de la suma de $3,000 que éste reclama por violación de un contrato por parte de Hull-Dobbs Co. of P. R., cuyo contrato no es el que adquirió la peticionaria de dicha Hull-Dobbs Co. of P. R. ni en cuyo contrato la peticionaria fué parte.

"(d) Que en lo que a la peticionaria Universal C. I. T. Credit Corp. concierne el señor Gatell estaba impedido, a virtud de lo convenido en el propio contrato de venta condicional que él voluntariamente suscribió, y cuya autenticidad expresamente admitió, de formularle tales reclamaciones."

La moción eliminatoria de la Universal fué declarada sin lugar a virtud de extensa resolución del tribunal a quo, fechada el 24 de julio del pasado año. Para revisar esa resolución libramos un auto de *certiorari* a instancias de la cesionaria. La contención de ésta ahora es que el tribunal a quo erró al concluir (1) que era procedente ventilar dentro de una acción de reposesión la contrademanda del demandado, las alegaciones de la cual constituyen de su faz una causa de acción contra una persona que no ha sido hecha parte en el litigio, por daños y perjuicios que surgen del incumplimiento de contratos en los cuales la peticionaria no es parte, no siendo tampoco dichos contratos parte del contrato de venta condicional que dió lugar al procedimiento de reposesión, imponiéndosele así responsabilidad por daños y perjuicios no causados por ella; y (2) que procedía ventilar dentro de una acción de reposesión de bienes muebles incoada de conformidad con lo dispuesto en la Ley de Ventas Condicionales, una reclamación por daños y perjuicios formulada por el comprador condicional contra la peticionaria.

█ Tanto la peticionaria como el interventor Gatell ponen gran énfasis en lo resuelto por nosotros en *Mattei & Co.* v. *Maldonado*, 70 D.P.R. 468. Sin embargo, ese caso es claramente distinguible del presente. En él los allí litigantes

suscribieron un contrato de venta condicional en relación con una refrigeradora eléctrica. Al dejar el comprador de pagar puntualmente algunos de los plazos, la vendedora inició un procedimiento de reposesión. El comprador contestó por escrito admitiendo que la querellante era dueña de la refrigeradora, negando haber comprado la misma y alegando que el mueble que se le entregó era distinto al comprado, así como que la refrigeradora que se le instaló estaba abollada y era de precio diferente al convenido, y que al protestar de ello, la vendedora le hizo saber que le rebajaría la suma de $100 del precio convenido. Oída la cuestión así planteada, el tribunal inferior dictó sentencia declarando sin lugar la "demanda," con costas y honorarios de abogado. La vendedora condicional apeló para ante este Tribunal. Al resolver el caso dijimos en el curso de nuestra opinión:

"Existe conflicto en la jurisprudencia respecto a si en acción entablada por el vendedor para recuperar la posesión de un bien mueble vendido en venta condicional, por haber habido un incumplimiento del contrato por el comprador, debe permitirse a éste plantear la defensa de que existen vicios o defectos aparentes u ocultos en la cosa, o el incumplimiento del contrato . . . por parte del vendedor. (Citas). La cuestión específica no ha sido resuelta por esta Corte. Nada dice nuestra Ley de Ventas Condicionales (núm. 61 de 1916) respecto a si dentro del procedimiento de reposesión a que ya hemos hecho referencia, puede dilucidarse o no semejante defensa. Empero, si se sostuviera que por ser el procedimiento de reposesión uno especial y sumario al plantearse una defensa como la suscitada por el comprador en este caso debe declararse sin lugar la solicitud de reposesión, muy poco o nada se adelantaría con ello. Una resolución en tal sentido dejaría a las partes en la misma situación en que se hallaban antes de radicarse la declaración jurada con que a virtud del artículo 6 se inicia el procedimiento de reposesión y les obligaría a entablar uno o más pleitos independientes para dirimir cualesquiera conflictos existentes entre ellos. *Nos parece, en su consecuencia, que toda vez que las partes se encuentran ante el tribunal y éste tiene jurisdicción sobre ellas y sobre la materia y que puesto que se le da a éstas oportunidad para comparecer y ser oídas en torno de sus respectivas reclamacio-*

*nes o derechos, la mejor práctica debe ser determinar dentro del procedimiento mismo de reposesión tales reclamaciones o derechos, más bien que circunscribirse al hecho escueto de si ha habido o no un incumplimiento del contrato de venta condicional por parte del comprador y por ende de si procede o no la reposesión solicitada."* (Bastardillas nuestras.)

Empero, la situación en el presente recurso es completamente distinta. Aquí no se trata únicamente de defensas planteadas por el comprador a base de vicios ocultos de la cosa, sino también de reclamaciones afirmativas que no pueden establecerse dentro de este procedimiento especial y que además se basan en promesas hechas al comprador por la vendedora original.

 Un contrato de venta condicional como el aquí envuelto no es un instrumento negociable. 47 Am. Jur. 139, sec. 929. Sin embargo, puede ser cedido a un tercero. El aquí envuelto podía serlo a virtud de sus propios términos. [5] Cuando se cede un contrato de esta índole, el cesionario se subroga en los derechos del cedente y a la vez asume las obligaciones que este último tenga para con el comprador al momento de la cesión. Es decir, toma el documento sujeto a los vicios (*infirmities*) que el mismo pueda tener y responde de cualesquiera garantías (*warranties*) de que por ley o a virtud del contrato el vendedor (*cedente*) venga obligado a responder en favor del comprador, hasta el momento mismo de la transferencia del contrato. *State Nat. Bank* v. *Cantrell*, 143 P.2d 592, 152 A.L.R. 1216; *Jegen* v. *Berger*, 77 C.A.2d 1, 174 P.2d 489; Bogert, *Uniform Laws Annotated*, Vol. 2A, pág. 48; ob. cit., *Cumulative Annual Pocket Part*, 1953, págs. 36 y 37; *Parker* v. *Funk*, 197 Pac. 83. *Cf.* arts. 1374 y 1418 del Código Civil, ed. de 1930. Por virtud de esa cesión y de los derechos que la misma lleva consigo, el cesionario de tal contrato está autorizado para iniciar un procedimiento de reposesión. 78 C.J.S. 452; 47 Am. Jur. 138; 57 Yale L. J. 1414, 1417. Tal procedimiento está regulado por el art. 6

---

[5] Véase la cláusula (1) del contrato de venta condicional, copiada más arriba.

de la Ley 61 de 13 de abril de 1916 (pág. 126), según fué enmendada por la Ley núm. 40 de 27 de junio de 1925 (pág. 247).

El art. 6, supra, dispone en síntesis que siempre que se vendan artículos bajo condición de que el título de los mismos será retenido por el vendedor o por otra persona, hasta que se verifique el pago del precio, los mismos podrán ser recuperados por el vendedor o su cesionario, al faltarse al cumplimiento de las condiciones de venta; que en dicho caso los bienes serán retenidos por el vendedor por un período de treinta días contados desde la fecha en que se hubieren recuperado, pudiendo el comprador o su cesionario dar cumplimiento durante dicho período a los términos del contrato y recibir subsiguientemente los bienes; que después de expirado el referido plazo, si el comprador o su cesionario no diere cumplimiento al contrato, el vendedor o el cesionario podrá hacer vender los artículos en pública subasta y si los mismos no son vendidos dentro de los treinta días subsiguientes, el comprador podrá recuperar del vendedor la cantidad pagada a cuenta, menos un cargo razonable por el uso de los artículos. Dispone además, que para que el vendedor condicional pueda recuperar los bienes objeto del contrato, deberá presentar ante la corte correspondiente una declaración escrita y jurada haciendo constar que el comprador condicional no ha cumplido los términos del contrato y que la reclamación se hace de buena fe, acompañando a la misma copia del contrato con nota de su inscripción en el registro de ventas condicionales. Asimismo, que al recibir la declaración jurada y la copia del contrato, el juez citará a las partes para una audiencia que tendrá lugar dentro de los diez días siguientes y que "si estimare que no se ha cumplido la condición por el comprador, dictará una orden disponiendo que el márshal se incaute de los bienes reclamados, los cuales bienes el márshal los entregará al vendedor condicional sujetos a las disposiciones de esta ley."

El procedimiento de reposesión es uno especial, que se inicia mediante una simple declaración jurada y no a virtud de una demanda ordinaria. Además, es un procedimiento sumario, que no está sujeto a los tecnicismos ni a las demoras de que por lo general son objeto los pleitos civiles corrientes. El propósito del estatuto sin duda es que una vez que el contrato de venta condicional queda incumplido por el comprador, el vendedor (o cesionario) pueda recuperar sumariamente el bien mueble de cuya posesión se había desprendido, pero cuyo dominio había tenido en todo momento. Ése fué precisamente el procedimiento seguido en este caso por la cesionaria.

Si bien el comprador—aquí interventor—alega que el contrato de venta condicional no fué cedido a la peticionaria el mismo día de su otorgamiento, sino mucho después, (⁶) sin embargo las defensas que plantea dicho comprador no se dirigen a actuaciones de la propia cesionaria, sino más bien a actuaciones y promesas héchasle, posiblemente después de cedido el contrato de venta condicional, por la cedente Hull-Dobbs Co. of Puerto Rico. Aunque la cesionaria adquirió el contrato sujeto a los vicios y responsabilidades existentes al momento de la cesión, sin embargo, cualesquiera promesas ulteriores hechas por la cedente (vendedora) al comprador Gatell no pueden en forma alguna afectar los derechos de la cesionaria a cobrar mediante el procedimiento de reposesión cualquier suma insoluta con motivo del contrato—*Cf. North American Acceptance Corporation* v. *Bihlmeier*, 74 N.E.2d 831; *Refrigeration Discount Corporation* v. *Chronis*, 117 Conn. 457; *Saranac Mach. Co.* v. *Nants & Co.*, 51 S.W.2d 479, 480; 6 C.J.S. 1161 y 1162, secs. 105 y 107; *First Acceptance Corp.* v. *Kennedy*, 95 F.Supp. 861, 872; *Apple* v. *Edwards*, 16 P.2d 700, 87 A.L.R. 179; 44 Ill.L.Rev. (1949–50) pág. 227.

---

(⁹) La cesionaria alega que el contrato le fué cedido el mismo día que se otorgó.

El permitir que dentro de un procedimiento de reposesión iniciado por un cesionario se ventilen, discutan y resuelvan cuestiones como las suscitadas por el interventor equivaldría a adulterar totalmente dicho procedimiento y a inyectar en el mismo controversias enteramente extrañas a él. La moción eliminatoria de la cesionaria debió ser declarada con lugar.([7])

Aunque el comprador, aquí interventor, no puede interponer semejantes defensas dentro del procedimiento de reposesión, sin embargo él no queda indefenso. No obstante el procedimiento sumario que actualmente se sigue en su contra, él puede iniciar, si así lo desea, pleito independiente contra la Hull-Dobbs Co. en relación con el incumplimiento de las supuestas promesas que ella le hizo. Si la aquí cesionaria debe figurar o no como demandada en dicho pleito es cuestión que no debemos por ahora anticipar.

*Debe anularse la resolución recurrida y devolverse el caso al Tribunal Superior, Sala de San Juan, para ulteriores procedimientos consistentes con esta opinión.*

El Juez Presidente Sr. Snyder disintió.

----

Opinión disidente emitida por el JUEZ ASOCIADO SR. BELAVAL

Hull-Dobbs Co. of Puerto Rico le vendió al señor José M. Gatell un automóvil, mediante un contrato de venta condicional. El contrato fué posteriormente cedido a la Universal C.I.T. Credit Corporation. Parece que el señor Gatell dejó de pagar algunos plazos de la venta condicional, y la cesionaria Universal C.I.T. Credit Corporation, acudió al Tribunal Superior de Puerto Rico, Sala de San Juan, con el procedimiento de reclamación y entrega de bienes muebles (repossession), que autoriza el art. 6 de la Ley núm. 61 de 13 de abril de 1916 (pág. 126), según quedó enmendado por la Ley núm. 40 de 27 de junio de 1925 (pág. 247). La ilus-

----

([7]) Desde luego, nuestra conclusión sería distinta si se tratara de una acción ordinaria en cobro de dinero, de una para recobrar la posesión de bienes muebles, etc.

trada sala sentenciadora citó a las partes a una vista para determinar el incumplimiento de las condiciones establecidas en el contrato, y al comparecer el señor Gatell, formuló las siguientes defensas especiales y reconvención:

"1. Al obtener el demandado de la demandante el vehículo objeto del contrato de venta condicional, éste notó que el mismo tenía ciertos desperfectos mecánicos los cuales comunicó inmediatamente al vendedor condicional Hull-Dobbs Co. of Puerto Rico.

"2. El vendedor condicional Hull-Dobbs Co. of Puerto Rico se comprometió con el demandado a corregir los desperfectos señalados y se comprometió además a que, en caso de que los mismos no pudieran ser corregidos, le devolvería el dinero pagado por éste al obtener el vehículo o le entregaría un vehículo nuevo que estuviera en perfectas condiciones de uso.

"3. El demandado llevó el vehículo objeto del contrato de venta condicional *más de ocho veces* a los talleres de reparación de la vendedora condicional, y los mecánicos de ésta no pudieron corregir los desperfectos y le informaron que los mismos no podían ser corregidos.

"4. El demandado solicitó entonces la entrega de su dinero u otro vehículo, a lo cual se negó la demandante.

"5. El día que el vehículo del demandado fué embargado en aseguramiento de sentencia, el mismo se encontraba en los talleres de reparación de la demandante."

"2. El demandante reconvencionado no ha cumplido las obligaciones asumidas bajo el contrato y personalmente con el demandado, causándole daños por valor de $3,000.00."

Solicitando de la ilustrada Sala sentenciadora: (a) que decretara la resolución del contrato de venta condicional, (b) que ordenara a la cesionaria que entregara y devolviera al comprador el precio de venta pagado y los abonos efectuados por dicho comprador, (c) que condenara a la cesionaria a satisfacer al comprador la suma de $3,000 por los daños y perjuicios sufridos por ésta, más los intereses, costas y honorarios de abogado.

La cesionaria solicitó de la ilustrada Sala sentenciadora que eliminara de la contestación del comprador condicional la aludida reconvención, por los siguientes fundamentos:

"(*a*) Dicha 'contrademanda' constituye exclusivamente una reclamación por daños causados al señor Gatell por parte de Hull-Dobbs Co. of P. R., quien no es parte en el caso, por motivo a que dicha Hull-Dobbs Co. of P. R. no había cumplido un convenio o contrato con el señor Gatell y cuyo convenio o contrato no tiene que ver nada con el contrato de venta condicional envuelto en la acción de reposesión; todo lo cual se desprende de las alegaciones de dicha contrademanda.

"(*b*) Porque dentro del procedimiento sumario de Reposesión de Bienes Muebles incoado de acuerdo con lo dispuesto en la Ley de Ventas Condicionales no se puede ventilar una causa de acción por daños y perjuicios.

"(*c*) Que estando dicha Reconvención dirigida contra Hull-Dobbs Co. of P. R. y no siendo parte en el pleito Hull-Dobbs Co. of P. R., la demandante Universal C.I.T. Credit Corp. no puede responder de las acciones y contratos existentes entre el señor Gatell y Hull-Dobbs Co. of P. R., en cuyos contratos la aquí peticionaria no fué parte, y por lo tanto no viene obligada a responderle al señor Gatell de la suma de $3,000 que éste reclama por violación de un contrato por parte de Hull-Dobbs Co. of P. R., cuyo contrato no es el que adquirió la peticionaria de dicha Hull-Dobbs Co. of P. R. ni en cuyo contrato la peticionaria fué parte.

"(*d*) Que en lo que a la peticionaria Universal C.I.T. Credit Corp. concierne el señor Gatell estaba impedido, a virtud de lo convenido en el propio contrato de venta condicional que él voluntariamente suscribió, y cuya autenticidad expresamente admitió, de formularle tales reclamaciones."

Como se ve, la posición de la cesionaria ante la ilustrada Sala sentenciadora, fué, (1) que la cesionaria de un contrato de venta condicional no debe responder de los daños que haya causado el vendedor condicional al comprador condicional, por haberle vendido un automóvil defectuoso; (2) que dentro del procedimiento sumario de reposesión, autorizado por la Ley de Ventas Condicionales de Puerto Rico no se puede ventilar una causa de acción por los daños y perjuicios causados por el vendedor condicional al comprador condicional por haberle vendido un automóvil defectuoso; y (3), que el comprador condicional estaba impedido, en virtud de la renuncia contenida en el propio contrato de venta condicional, de esta-

blecer reclamación alguna contra el vendedor condicional a su cesionario por el funcionamiento defectuoso del automóvil.

1. La invulnerabilidad de la posición de la cesionaria de un contrato de venta condicional frente a las defensas del comprador condicional, se basó originalmente en la posible negociabilidad del contrato de venta condicional por sí mismo, o en la posible negociabilidad de los pagarés firmados conjuntamente con el contrato de venta condicional por ellos mismos. La primera distinción establecida por la jurisprudencia fué que el contrato de venta condicional por sí mismo no era un instrumento negociable, de acuerdo con las disposiciones de la Ley de Instrumentos Negociables adoptada por los diferentes estados, y por lo tanto, la cesionaria de dicho contrato de venta condicional, no era un tenedor de buena fe, (holder in due course), libre de los defectos en el título de propiedad de las partes que la hubieran precedido, y sin responsabilidad, en cuanto a las alegaciones que en su defensa, pudieran utilizar esas mismas partes entre sí, pudiendo exigir el pago del importe total del documento a todas las partes responsables de dicho pago. (Véase artículos 52, 53, 54, 55, 56, 57 y 58 de la Ley número 17 de 22 de abril de 1930, conocida como "Ley Uniforme de Instrumentos Negociables" de Puerto Rico, idéntica en su texto a la que prevalece en los estados norteamericanos.) La segunda distinción establecida por la jurisprudencia fué qué los pagarés firmados conjuntamente con el contrato de venta condicional, no eran instrumentos negociables por sí mismos, a menos que el texto completo de las condiciones de la venta condicional aparecieran transcritas en dichos pagarés, ya que un documento para ser negociable, " 'debía' estar completo y ser regular en su apariencia", (artículo 53 de nuestra propia ley), o sea, que la exigibilidad conste del propio documento, pero, pronto se descubrió que al aparecer en el pagaré las condiciones de la venta condicional, es indudable que la cesionaria, o el tenedor de buena fe, adquiría conocimiento de las condiciones en que se había expedido el documento negociable, y no podía alegar su ignorancia

ante cualquiera causa de nulidad del documento, o defecto en el título de la persona que lo negoció, (artículo 55 de nuestra propia ley). Por lo tanto, se descartó la posibilidad de convertir en instrumentos negociables a los pagarés expedidos conjuntamente con los contratos de venta condicional.

Hoy en día, puede decirse con bastante seguridad, que ya se trate, (1) de la cesión de un contrato de venta condicional aisladamente, o (2), de un contrato de venta condicional con pagarés representando los distintos plazos conjuntamente, la cesionaria de un contrato de venta condicional se encuentra sujeta a las defensas que tenga el comprador condicional, por cualquier incumplimiento del contrato por el vendedor condicional. Para el primer caso, se ha establecido la doctrina que la cesionaria se encuentra en igual plano de responsabilidad, —para no tener que hacer uso de esa horrible frase consagrada por el mal gusto judicial, "dentro de los mismos zapatos"—, que el vendedor condicional, en cuanto al incumplimiento por dicho vendedor condicional de sus obligaciones dentro del contrato. Para el segundo caso, se ha establecido la doctrina, que el contrato de venta condicional y los pagarés firmados de acuerdo con los distintos plazos del pago de dicho contrato, deben ser examinados conjuntamente como si se tratara de una sola transacción entre las mismas partes.

Con la aparición de las llamadas compañías de finanzas, que en realidad de verdad son agencias auxiliares de los departamentos de venta, se intentó por algún tiempo, hacer prevalecer la tesis, que por tratarse de dos organizaciones distintas, la compañía de finanza cesionaria no debía estar sujeta a las reclamaciones que el comprador condicional tuviera contra el vendedor condicional cedente. Haciendo uso de la experiencia anterior, se ha establecido la teoría de la identidad de intereses (close relationship), (too intimate to be a holder in due course), (identity in interest), mediante la cual la compañía de finanza cesionaria queda sujeta a las mismas defensas que pueda tener el comprador condicional contra el vendedor condicional cedente.

La jurisprudencia en contrario que se forma mientras la institución de derecho se integra, está basada algunas veces en la variedad de los estatutos que reconocen las acciones posesorias para el recobro de propiedad mueble, en la confusión sobre el carácter negociable o no negociable de los contratos de ventas condicionales, o de los pagarés suscritos conjuntamente con dichos contratos, en las renuncias expresas de los contratos, de las cuales trataremos más adelante, y alguna que otra vez, en las actitudes puramente personales de los jueces, las cuales nunca constituyen una buena razón en derecho, apesar de los pragmáticos alardes de la escuela realista.

Como un índice inicial del desenvolvimiento a través de la jurisprudencia de la doctrina que ha establecido el derecho del comprador condicional a establecer contra el cesionario todas las defensas que pudiera tener contra el vendedor condicional cedente, véanse: *First & Lumbermen's Nat. Bank of Chippewa Falls* v. *Buchholz*, 18 N.W2d 771, (*Youngdahl*), (1945), cita precisa a las páginas 774 y 775; *State Nat. Bank of El Paso, Tex.* v. *Cantrell*, 143 P.2d 592, (*Sadler*), 1943), cita precisa a la pág. 594; *Taylor* v. *Atlas Security Co.*, 249 S. W. 746, (*Bland*), (1923), cita precisa a la página 748; *Palmer* v. *Associates Discount Corporation*, 124 F.2d 225, (*Miller*), (1941), cita precisa a la página 227; *C.I.T. Corporation* v. *Emmons*, 107 So. 662 (*Hamiter*), (1940), cita precisa a la página 663; *Commercial Credit Co.* v. *Childs*, 137 S.W.2d 260, (*Humphreys*), (1940), cita precisa a la página 262; *Mutual Finance Co.* v. *Martin*, 63 So.2d 649, (*Drew*), (1953), cita precisa a la página 652; *Commercial Credit Corporation* v. *Orange County Machine Works et. al.*, 214 P.2d 819, (*Edmonds*), (1950), cita precisa a la página 821; *Public Nat. Bank & Trust Co.* v. *Fernández*, 121 N.Y.S.2d 721, (*Schweitzer*), (1952), cita precisa a las páginas 724, 725, 726 y 727; *Battle Creek B. Wrapping Mach. Co.* v. *Paramount B. Co.*, 39 P.2d 323, (*Pratt*), (1934), cita precisa a la página 326;

2. Dentro de un procedimiento de reclamación y entrega de bienes muebles (reposesión) (repossession) el comprador condicional puede, alegar como una de sus defensas contra el cesionario del vendedor condicional, cualesquier daños que haya sufrido por el mal funcionamiento, o la condición defectuosa de la cosa vendida bajo contrato de venta condicional. Aunque por lo general los anteriores estatutos a la Ley Uniforme de Ventas Condicionales, de donde proviene el nuestro, no contenían ninguna disposición sobre la clase de defensa que podía alegar el comprador condicional contra el vendedor condicional o su cesionario, usando como procedimiento supletorio las disposiciones generales de los Códigos de procedimiento, en nuestro caso, el Código de Enjuiciamiento Civil de Puerto Rico, se ha establecido uniformemente la teoría, que el comprador condicional puede presentar contra su vendedor condicional o su cesionario todas las defensas que tendría en una acción civil ordinaria, fueran contrademandas, reconvenciones, reclamaciones en equidad (equities), o cualesquiera otras razones por las cuales no deba entregar la posesión de la propiedad comprada. La mejor discusión sobre el uso del derecho supletorio de los códigos de procedimiento, cuando el estatuto de ventas condicionales no porvee expresamente qué clases de defensas puede establecer el comprador condicional, la contienen los casos de *Marks* v. *Frigidaire Sales Corporation*, 54 F.2d 974 (*Hitz*), (1931), cita precisa a la página 975; *United States Hoffman Machinery Corporation* v. *Ebenstein*, 96 F.2d 661, (*Allen*), (1939), cita precisa a la página 663; *Harrolds Motorcar Co.* v. *Gordon*, 221 N.Y.S. 486, (*Gibbs*), (1927), cita precisa a la página 487, donde se aplica el Código general de procedimientos civiles en cuanto a defensas, reconvenciones y contrademandas, en líneas generales igual a las disposiciones de los artículos 110, 111, 112, 113, 114 y 115 del Código de Enjuiciamiento Civil de Puerto Rico. Esto en cuanto al aspecto puramente procesal de la cuestión. De manera pues, que aun partiendo de la base que las Reglas de Enjuiciamiento Civil de Puerto Rico, no fueran

aplicables como derecho supletorio al procedimiento de reposesión establecido por nuestra Ley de Ventas Condicionales, no tendríamos más remedio que concluir, que el Código de Enjuiciamiento Civil de Puerto Rico sería el derecho supletorio para el procedimiento de reposesión de nuestra Ley de Ventas Condicionales.

En cuanto a la causa de acción por daños, no hay duda que cualesquiera daños sufridos por el comprador por causa de un incumplimiento por parte del vendedor condicional del contrato, bien se refiera a negarse a entregar la cosa vendida, a entregarla en condiciones defectuosas para el uso propuesto, o a entregar otra de menor calidad o valor, (vicio oculto de la cosa) puede ser alegada por el comprador condicional como una defensa para dos propósitos: (1) para lograr que se le releve de la obligación de pagar el resto del contrato, por ser los daños recibidos superiores al precio adeudado, o (2) para lograr la reducción del precio no satisfecho de acuerdo con la estimación numérica del daño sufrido que haga el tribunal: *Mercantile Trust Co.* v. *Roland,* 288 Pac. 300, (*Leach*), (1930), cita a las páginas 303 y 304; *Marks* v. *Frigidaire Sales Corporation,* supra; *Pump Co.* v. *Harper,* 247 Pac. 985, (*Estes*), (1926), cita precisa al final de la página 985; *W. H. Bintz Co.* v. *Mueggler,* 154 P.2d 513 (*Ailshie*), (1945), cita precisa a la pág. 516; *United States Machinery Co.* v. *International Metals Dev.,* 168 P.2d 37 (*Adams*), (1946), cita precisa a la página 40; *Pioneer Engineering Works* v. *McConnel,* 212 P.2d 641, (*Metcalf*), (1950), cita precisa a la página 652; *Jegen* v. *Berger,* 174 P.2d 489, (*Scholtky*), (1946), cita precisa a la página 498 (daños por pérdida de ganancias); 120 A.L.R. 759, (Edición de la Lawyer's Cooperative Publishing Company), (1941).

3. Las renuncias por anticipado de cualesquier derechos del comprador dentro del contrato no son favorecidas por la jurisprudencia por ser contrarias al orden público, ya que están diseñadas para abolir el derecho de los tribunales a intervenir para aplicar la ley: *Progressive Finance & Realty*

*Co.* v. *Stempel*, 95 S.W.2d 834, (*Sutton*), (1936) cita precisa a la página 836.

La ley es siempre un pacto implícito en todo contrato escrito. Son nulos los actos ejecutados contra lo dispuesto en la ley, salvo los casos en que la misma ley ordene su validez, primera disposición del artículo 4 del Código Civil de Puerto Rico. Los derechos concedidos por las leyes son renunciables, a no ser esta renuncia contra la ley, el interés o el orden público, o en perjuicio de tercero, segunda disposición del artículo 4 del Código Civil de Puerto Rico.

La renuncia de los derechos concedidos por la ley, en virtud de un contrato, tiene que estar expresamente autorizada por la propia ley. Como los contratantes no pueden crear su propia ley mediante un contrato, los contratos tienen que seguir las disposiciones de la ley, a menos que la misma ley autorice la renuncia del derecho correspondiente. La misma ley que autorice la renuncia de derechos puede fijar las condiciones mediante las cuales tales derechos pueden ser renunciados.

Por ejemplo, el artículo 1055 del Código Civil de Puerto Rico dispone que "la responsabilidad procedente del dolo es exigible en todas las obligaciones" y que "la renuncia de la acción para hacerla efectiva es nula", de lo cual resulta, que cualquiera renuncia por anticipado de toda actuación fraudulenta o dolosa de un vendedor para comprometer la voluntad del comprador, resulta nula. Por ejemplo, el artículo 1374 del Código Civil de Puerto Rico dispone que "el vendedor responde al comprador del saneamiento por los vicios o defectos ocultos de la cosa vendida, aunque los ignorase", pero que "esta disposición no regirá cuando se haya estipulado lo contrario y *el vendedor ignorara los vicios o defectos ocultos* de lo vendido", de lo cual resulta, que para que la renuncia del derecho de saneamiento por vicio oculto o defecto oculto resulte válida, el vendedor tiene que probar que ignoraba que tales vicios o defectos existieran en la cosa vendida, pues si los conoce, entonces se reputa la venta como

fraudulenta o dolosa y entonces la renuncia queda prohibida: 10 Manresa 225, cuarto párrafo, (Quinta Edición del Instituto Editorial Reus), (1950).

Lo malo para los vendedores que confían en sus renuncias sobre saneamiento por vicio o defecto oculto, es que su conocimiento del defecto de fábrica, o de la condición que hace la cosa vendida "impropia para el uso a que se la destina", (artículo 1373 del Código Civil de Puerto Rico), se presume siempre, pues el conocimiento superior sobre la cosa vendida, la tiene el vendedor que se dedica habitualmente a vender un determinado tipo de mercadería y quien, a su vez, se considera garantizado por el fabricante o distribuidor del fabricante de la cosa vendida por cualquier defecto o vicio oculto de la cosa vendida, según se explica caso tras caso, en las decisiones arriba acotadas, la gran mayoría de los cuales tratan sobre la defensa del comprador de la cosa defectuosa, o comprador de cosa impropia para el uso a que se la destina (failure of consideration for breach of warranty) o (failure of consideration for breach of warranty of fitness). Además dondequiera que se trata de la venta de una cosa defectuosa o impropia para el uso a que se la destina, siempre hay un elemento de fraude abierto a la interrogación de la conciencia judicial.

Pero ya refiriéndonos a este caso específicamente, es imposible considerar la cláusula del contrato que dispone: "el comprador ha recibido del vendedor en el día de hoy el vehículo, el cual ha sido examinado y probado por el comprador y aceptado a su entera satisfacción", como una renuncia expresa de la garantía implícita de buen funcionamiento o uso adecuado, a menos que la prueba no demostrara que el comprador es un perito que *por razón de su oficio o profesión* podía descubrir fácilmente dichos defectos o vicios ocultos, según lo dispuesto por el art. 1373 del Código Civil de Puerto Rico.

Estoy totalmente consciente de la importancia que para la economía del consumo, representa en nuestro tiempo, la venta condicional. La misma salud de una institución económica

que permite la adquisición de bienes muebles por consumidores de pequeños ingresos, exige que se adopte por los tribunales como regla universal, que toda cosa defectuosa o impropia para el uso que se espera de ella, vendida bajo contrato de venta condicional, no pueda ser recuperada, hasta que los tribunales no ajusten el precio de acuerdo con el demérito de la cosa vendida. La renuncia de tales derechos no debe ser favorecida, por ser contrario al orden público.

Disiento.