# 98 DTA 146

### TRIBUNAL DE CIRCUITO DE APELACIONES
### CIRCUITO REGIONAL V DE PONCE Y AIBONITO

KAREN M. TORRES ECHEVARRIA
Querellante-Recurrida

v.

BANCO FINANCIERO DE PUERTO RICO
Co-querellada-Recurrente

CARROS USADOS DE PUERTO RICO
Co-querellada

DEPARTAMENTO DE ASUNTOS DEL CONSUMIDOR
Agencia Recurrida

San Juan, Puerto Rico, a 27 de marzo de 1998

Panel integrado por su Presidente, el Juez Negrón Soto
y los Jueces Aponte Jiménez y Segarra Olivero

Negrón Soto, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El recurrente, Banco Financiero de Puerto Rico, en adelante el Banco, nos solicita que revoquemos un dictamen emitido por el Departamento de Asuntos del Consumidor, en lo sucesivo DACO, el cual decretó la resolución de un contrato de compraventa de un vehículo de motor usado otorgado entre la recurrida, Karen M. Torres Echevarría, en lo sucesivo Srta. Torres, y el concesionario de autos Carros Usados de Puerto Rico, en adelante Carros Usados, en el cual el Banco proveyó el financiamiento.

Confirmamos la resolución emtida por DACO. Veamos los hechos pertinentes.

### I

El 20 de agosto de 1996, la Srta. Torres, otorgó un contrato de venta condicional de un vehículo usado Ford Mustang del año 1988 con Carros Usados. Este expidió un Certificado de Garantía, en el cual constaba que el millaje del vehículo al momento de la venta era de 80,860 millas. Se le concedió a la Srta. Torres una garantía de un mes o 1,000 millas, lo que ocurriese primero. El precio de venta fue de $9,500.00. La Srta. Torres entregó a Carros Usados la suma de $3,000.00 en calidad de pronto y el balance restante, consistente en $6,500.00, lo financió a través del Banco. Así, Carros Usados, recibió la totalidad del precio de venta.

El 27 de agosto de 1996 el vehículo comprado se apagó mientras estaba en marcha y se volvió inoperante. La Srta. Torres solicitó servicios de reparación en garantía a Carros Usados. Allí le repararon al auto el alternador y las cajas de bolas. Al cabo de dos semanas volvió a apagarse el vehículo mientras estaba en marcha y tenía un ruido en la parte trasera. Aparentaba como si corriera *"aguantado"*. La Srta. Torres solicitó nuevamente servicio en garantía a Carros Usados. Le repararon el auto, tardando la reparación una semana. El 11 de septiembre de 1996 le entregaron el vehículo teniendo éste todavía el ruido en la parte trasera. El 12 de septiembre del mismo año, el vehículo volvió a apagarse mientras estaba en marcha.

El 16 de septiembre de 1996 la Srta. Torres presentó una querella ante DACO por reparación defectuosa y vicios ocultos. Como querellados incluyó a Carros Usados y al Banco. Solicitó que se repararan los desperfectos que adolecía el vehículo. El 20 de septiembre siguiente, la Srta. Torres, notificó al Banco, por escrito, mediante correo certificado con acuse de recibo los problemas mecánicos que tenía el vehículo.

El vehículo fue reparado, como parte de la garantía, por Carros Usados, informándosele a la Srta. Torres que el problema del auto era la computadora. El 30 de octubre de 1996, se efectuó una inspección del auto por el Sr. Marcos Martínez Vera, investigador de querellas de autos de DACO. Este encontró, según expresa en su informe de investigación, que el vehículo tenía un ruido en la punta del eje trasera y en el tren delantero, fallo en baja, corte eléctrico y *"liqueo"* de power steering. También consta en dicho informe que el millaje del auto para esa fecha era de 131,822 millas. Se fijó el 6 de noviembre de 1996 como fecha para que se reparara el auto por garantía sin costo alguno para la Srta. Torres. Nuevamente el vehículo fue reparado esta vez el 9 de noviembre de 1996, pero mostró los mismos problemas, por lo tanto la Srta. Torres lo volvió a llevar a reparar. El 29 de noviembre de 1996, la Srta. Torres buscó su auto, peró notó que éste tenía los mismos problemas mecánicos que antes. Por esta razón llegó a un acuerdo con Carros Usados para llevarlo a otro lugar a reparar, asumiendo éste los gastos que conllevara la reparación. En el mes de diciembre de 1996, Carros Usados cesó en sus operaciones sin haber reparado dicho vehículo.

El 29 de junio de 1997, la Srta. Torres enmendó la querella presentada, para solicitar como remedio la resolución del antes referido contrato de compraventa. Celebrada la vista administrativa correspondiente DACO emitió su resolución. Determinó que el vehículo se vendió con vicos ocultos que lo hacían impropio para su uso, por lo que la querella se regía por las disposiciones del Código Civil relativas al saneamiento por vicios ocultos. Determinó que se cumplía con todos los requisitos para que prosperara la acción. Aplicando el Artículo 1373 del Código Civil, 31 L.P.R.A. sec. 3841, decidió que el Banco estaba obligado a responder por el defecto oculto que tenía el auto. DACO determinó que, no obstante el vehículo haberse llevado a reparar en numerosas ocasiones, permanecía con el defecto de apagarse, por lo cual no podía ser utilizado.

Expresó DACO en su resolución lo siguiente:

*"En cuanto al Banco Financiero de P.R., responde solidariamente a la querellante. El dealer Carros Usados Inc. fue embargado y cerrado por el coquerellado, por lo que la querellante se vio imposibilitada de que se le honrara la garantía. Además fue notificada debidamente dentro del plazo de veinte (20) días mediante carta certificada con acuse de recibo, según dispone la Ley de Venta al Por Menor a Plazos y Compañías de Financiamiento."*

DACO ordenó al Banco reembolsar a la Srta. Torres el pronto y el total de las mensualidades pagadas por ésta y a ésta a devolver el vehículo al Banco. El Banco presentó ante este Foro una solicitud de revisión. Expedimos el auto solicitado. El Banco y DACO sometieron sus alegatos. El Banco argumenta que según el Reglamento de Garantía de Vehículos de Motor de DACO, el vehículo en controversia no tenía garantía y que es improcedente responsabilizarlo por los actos u omisiones de Carros Usados. DACO sostiene lo contrario. Debemos resolver lo planteado.

## II

Comencemos por discutir el primer señalamiento de error apuntado por el Banco a los efectos de que según el Reglamento de Garantías de Vehículos de Motor, promulgado por DACO, el vehículo en controversia no tenía garantía.

El Artículo 24 del Reglamento sobre Garantía de Vehículos de Motor de DACO, establece el término y naturaleza de la garantía en los vehículos de motor usados aplicables a toda persona jurídica que se dedique a esa actividad comercial en Puerto Rico. Su inciso 24.1 lee así:

*"Todo vendedor de vehículos de motor usados, concederá garantía en piezas y mano de obra. Si el comprador desea dicha garantía, la misma será por escrito y conforme a lo establecido en este Reglamento. Esta garantía será a base del millaje recorrido y según la siguiente escala:*

*a) Menos de 36,000 millas- tres (3) meses o tres mil (3,000) millas, lo que ocurra primero.*

*b) Más de 36,000 millas, pero menos de 50,000- dos (2) meses o dos mil (2,000) millas, lo que ocurra primero.*

*c) Más de 50,000 millas hasta 100,000 millas- un (1) mes o mil (1,000) millas, lo que ocurra primero."*

El Artículo 35 del citado Reglamento expresa que nada de lo dispuesto en ese Reglamento limitará en forma alguna el derecho del consumidor a ejercer cualquier acción de saneamiento por vicios ocultos y la acción redhibitoria que reconoce el Código Civil.

El Banco sostiene que el vehículo poseía un millaje de 131,822 millas y que por lo tanto se encontraba fuera de cualquier posibilidad de garantía. Añade que la determinación de hecho número dos (2) expresada en la resolución de DACO, a los efectos de que *"el auto fue vendido con garantía de un mes o 1,000 millas, lo que ocurra primero"* no tiene apoyo en la prueba presentada ante la agencia. Los hechos demuestran que el 20 de agosto de 1996, al efectuarse la venta del auto, Carros Usados expidió a favor de la Srta. Torres un Certificado de Garantía, en el cual constaba que el millaje del auto al momento de la venta era de 80,860 millas, por lo que se le concedía una garantía de un mes o 1,000 millas, lo que ocurriese primero. Para el 30 de octubre de 1996, el millaje del vehículo era de

131,822 millas, según se refleja en el informe de investigación redactado por el investigador de querellas de DACO, en noviembre siguiente.

Es sabido que "*las conclusiones e interpretaciones de los organismos administrativos especializados merecen gran consideración y respeto, si están sostenidas por evidencia sustancial*". *García Oyola v. Junta de Calidad Ambiental*, **97 J.T.S. 25.** El alcance de la revisión judicial de una decisión administrativa está limitado por la Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. sec. 2175. La misma requiere que se confirmen las determinaciones de hechos de una agencia si están sostenidas por evidencia sustancial. *Reyes Salcedo v. Policía de Puerto Rico*, **97 J.T.S. 58**; *Metropolitana SE v. ARPE*, **94 J.T.S. 39.** Así, pues, el expediente administrativo del caso *a quo* contiene elementos, como hemos visto, que sostienen la determinación de hechos impugnada. Por lo tanto, este Foro no intervendrá con la misma.

No obstante, entendemos que es totalmente irrelevante el planteamiento del Banco respecto a si el auto tenía o no garantía. Sabido es que la garantía de reparar un vehículo de motor vendido, como obligación contractual, según contemplada en el Reglamento de DACO, es una distinta a la situación que se genera cuando el auto tiene vicios ocultos, la cual conlleva la obligación de sanear, por parte del vendedor. Además el Artículo 35 del Reglamento de DACO postula que nada de lo dispuesto en el Reglamento *"limitará en forma alguna el derecho del consumidor"* al saneamiento por razón de vicios ocultos.

### III

Consideremos el segundo señalamiento de error apuntado por el Banco a los efectos de que éste no es responsable por las actuaciones de Carros Usados. El Banco sostiene que no se le notificó de los hechos que daban lugar a la causa de acción de saneamiento por vicios ocultos dentro del término dispuesto por la Ley de Ventas a Plazos y Compañías de Financiamiento.

La Ley de Ventas a Plazos y Compañías de Financiamiento, 10 L.P.R.A. sec. 749(a)(3), le impone al comprador la obligación de notificar al cesionario de un contrato de venta condicional *"si el vendedor no hubiere cumplido todas sus obligaciones... por escrito, mediante correo certificado con acuse de recibo... dentro de los 20 días siguientes a la fecha en que tenga conocimiento de algún hecho que pueda dar lugar a una causa de acción o defensa que surja de la venta y que pudiera... tener en contra del vendedor*. Según se expresa en *Berríos v. Tito Zambrana Auto Inc., 123 DPR 317, 335 (1989), el propósito de dicho artículo "... fue proteger al cesionario de un contrato de ventas a plazos de aquellas reclamaciones por acciones de saneamiento por evicción o vicios ocultos, de no notificar el comprador al financiador en los términos expresados"*.

El Banco afirma que ya que el primer problema mecánico del auto ocurrió el 27 de agosto de 1996, ese día comenzó a decursar el término de 20 días que establece la ley para notificarle y que por lo tanto fue tardía la notificación del 20 de septiembre de 1996. Por su parte DACO alega que este término comenzó el día que la Sra. Torres presentó su querella ante DACO. No obstante, entendemos que dicho término comenzó a decursar el 12 de septiembre de 1996. Veamos. En cuanto al primer problema mecánico que tuvo el automóvil, no existía circunstancia alguna que le indicara a la Sra. Torres que su auto tenía vicios ocultos. Abona a esta conclusión el hecho de que la reparación del auto consistió en arreglos al alternador y las cajas de bolas, desperfectos que no reflejaban que el auto hubiese sido vendido con vicios ocultos. Al cabo de dos semanas el auto volvió a apagarse mientras estaba en marcha y presentó esta vez un ruido en la parte trasera. Una vez entregado, al día siguiente el auto volvió a apagarse mientras estaba encendido. Es ese día, el 12 de septiembre de 1996, el primer momento en que puede imputársele conocimiento a la Srta. Torres de los alegados vicios ocultos. Ante las circunstancias del caso y desde ese momento era patente, y razonablemente podía argumentarse, que no se trataba de meros desperfectos aislados y accidentales y sí de unos vicios ocultos que tenía el auto. El concurrir con el argumento del Banco e imputarle conocimiento a la Srta. Torres de los vicios ocultos el día en que se presentó el primer problema mecánico del auto, sería más que irrazonable, absurdo. Habiendo notificado la Srta. Torres al Banco sobre los problemas mecánicos que tenía el auto el 20 de septiembre de 1996, por escrito, mediante correo certificado con acuse de recibo, concluimos que dicha notificación fue una oportuna.

## IV

Ahora bien, ¿podía imputársele al Banco responsabilidad por los vicios ocultos que tenía el auto? Examinemos el derecho aplicable. Una vez perfeccionada una compraventa a plazos, el vendedor le cede a una entidad financiera su posición frente al comprador, a cambio del pago inmediato del precio. *"El cesionario se subroga en los derechos del cedente y a la vez asume las obligaciones que éste tenga para con el comprador al momento de la cesión". Universal Credit v. Tribunal Superior, 77* D.P.R. 574, 580, (1954). El cesionario responde de cualquier garantía de que por ley o a virtud del contrato, el vendedor venga obligado a responder en favor del comprador. *Ibid. En Berríos v. Tito Zambrana Auto Inc., supra*, se expresó lo siguiente:

*"...en la cesión de un contrato de "venta al por menor a plazos" (venta condicional), el cedente no queda liberado, porque en virtud de la Ley de Ventas a Plazos y Compañías de Financiamiento el legislador expresamente dispuso que el vendedor retuviera su responsabilidad frente al comprador. Art. 209 (f) de la Ley Núm. 68, supra, 10 L.P.R.A. sec. 749 (f). Las obligaciones principales del vendedor en la compraventa son la entrega y saneamiento de la cosa vendida. Art. 1350 del Código Civil, 31 L.P.R.A. sec. 3801. Considerando estas características particulares, la figura creada por el legislador realmente constituye una cesión de contratos atípica o sui géneris. Véase, también, el Art. 202 (85) de la misma ley, 10 L.P.R.A. sec. 742 (5)."*

A esos efectos la Ley de Ventas a Plazos y Compañías de Financiamiento, 10 L.P.R.A. sec. 742 (5), dispone que:

*"Todo contrato de ventas al por menor a plazos deberá contener el siguiente aviso:*

*"Aviso al cesionario-El cesionario que reciba o adquiera el presente contrato al por menor a plazos o un pagaré relacionado con éste, quedará sujeto en igualdad de condiciones a cualquier reclamación o defensa que el comprador pueda interponer en contra del vendedor. El cesionario del contrato tendrá derecho a presentar contra el vendedor todas las reclamaciones y defensas que el comprador pueda levantar contra el vendedor de los artículos o servicios".*

Apliquemos el derecho a la situación de autos. El Banco sostiene que no se le imputó ningún tipo de responsabilidad legal a Carros Usados en la resolución recurrida y que las disposiciones del Código Civil relativas al saneamiento por vicios ocultos son de aplicación exclusiva a los vendedores y que la responsabilidad de éstos no puede ser transferida a la institución que provee el financiamiento.

Conforme a los principios esbozados en *Berríos v. Tito Zambrana Auto Inc., supra*, si bien es cierto que Carros Usados, al efectuarse la cesión del contrato de compraventa al Banco, retuvo su obligación respecto al saneamiento de la cosa vendida, el cesionario, o sea, el Banco, responde al comprador del saneamiento por vicios ocultos. Dicha obligación se encuentra comprendida dentro de las obligaciones que éste asume al efectuarse la cesión.

Ahora bien, el caso de autos presenta una situación particular. Se desprende de la resolución emitida por DACO que Carros Usados fue embargado y cerrado por el Banco. Esta circunstancia no libera al Banco de su responsabilidad, ya que el resolver lo contrario implicaría dejar desprovista a la Srta. Torres del remedio que por ley le corresponde y liberar al Banco de su obligación legal, en cuanto al saneamiento por vicios ocultos.

## V

Nos resta considerar qué efecto, si alguno, tuvo para el Banco, el hecho de que el 29 de noviembre de 1996 la Srta. Torres convino con Carros Usados que llevaría su auto a reparar a otro lugar, corriendo éste con los gastos de la reparación.

Una vez más resaltamos el hecho de que la garantía contractual, según exigida por el Reglamento de Garantías de DACO, es diferente a la obligación de saneamiento por vicios ocultos. El acuerdo entre la Srta. Torres y Carros Usados, puede enmarcarse dentro de la garantía concedida en virtud del Certificado de Garantía. Dicha circunstancia es inmaterial y carece de efecto alguno en cuanto a las obligaciones legales del Banco sobre el saneamiento por vicios ocultos.

## VI

Por los fundamentos antes expuestos, se confirma la resolución emitida por DACO objeto de este recurso.

Lo acordó el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General