Pabón Chameco, Jueza Ponente
*584 TEXTO COMPLETO DE LA SENTENCIA
Comparecen ante nos, mediante recursos de revisión, VPH Motors Corp. H/N/C/ Triangle Chrysler-Mazda de Ponce, en adelante, VPH Motors, y DaimlerChrysler Services Caribbean, S.E., en adelante, Chrysler Credit, solicitando la revisión de una determinación del Departamento de Asuntos del Consumidor, en adelante, el D.A. C.O. Mediante dicho dictamen, el D.A.C.O. declaró Con Lugar la querella incoada por María del C. Rivas Rivera, en adelante, la recurrida.
Por las razones que expondremos a continuación, y luego de consolidar los recursos de revisión instados, y de considerar detenida y cuidadosamente la comparecencia de las partes, resolvemos que procede expedir los recursos, confirmando la determinación del D.A.C.O. en el recurso KLRA-03-00470 y modificar y devolver en el recurso KLRA-03-00471.
I
Conforme surge de los expedientes ante nuestra consideración, la recurrida interpuso querella ante el D.A. C.O. el 8 de abril de 2002. En la misma, alegó que había adquirido un vehículo de motor de HVP Motors de Ponce, que el mismo había sido chocado y que, al momento de perfeccionarse el contrato, no se le notificó este hecho.
Celebrada la vista administrativa, el D.A.C.O. emitió la Resolución recurrida el 5 de mayo de 2003, archivada el 6 de mayo de 2003.
Considerando la evidencia ofrecida, admitida y creída el Juez Administrativo efectuó las siguientes determinaciones de hechos:

“1- La parte querellada Carmen C. Rivas [recurrida] radica la presente querella el 8 de abril de 2002 contra los querellados H.V.P. Motors quien hace negocios como Triangle Dealers y Chrysler Credit de Puerto Rico. Del escrito presentado se desprende que la querellante [recurrida] alega que el 19 de junio de 2001 adquirió por compraventa el vehículo marca Ford modelo Winstar de 1998 tablilla CXX-844 por el precio de $15,257.00. Alega que el vehículo fue chocado de frente y ese hecho no le fue notificado antes de la venta.

2- De la prueba presentada se desprende que la querellante [recurrida] compró el vehículo antes mencionado al querellado Triangle Chrysler de Ponce el 19 de junio de 2001 por el precio antes mencionado. La querellante [recurrida]presto [sic] un pronto pago de $2,500.00 y el balance fue financiado por Chrysler Credit a razón [sic] de 48 pagos mensuales de $353.42 comenzando el 19 de julio de 2001. Hasta el 30 de enero, la querellante [recurrida]había efectuado 19 pagos para un total de $6,714.98.

3- La compraventa incluyo [sic] un seguro de doble responsabilidad por la cantidad de $3,260.00, el cual se paga con el pagare [sic]mensual del auto. Del contrato de venta se desprende que al momento de la venta el vehículo [sic] tenia [sic] un millaje de 43,117 millas.

*585
4- Para los meses de julio y agosto de 2001 a los dos meses de tenerla, el vehículo [sic] tubo [sic] problemas con la transmisión [sic] y fue al vendedor a solicitar servicio en garantía [sic] El servicio le fue negado porque el auto se rompio [sic]y la querellante [recurrida] tubo [sic] que repararla por su cuenta a un costo de $1,432.00.

5- El 31 de enero de 2002, mientras la querellante [recurrida] transitaba por una calle, el vehículo [sic] cayó en un hoyo y le causo [sic] daños al cross member y al parachoque del auto. Por motivo del accidente acude a las oficnas [sic]del seguro conocida como P.R.A.I.C.O. para reclamar los daños sufridos por el auto con motivo del accidente.

6- El ajustador del seguro Guillermo Morales examino [sic] el vehículo [sic] y encontró [sic] que el auto había [sic] chocado y reparado anteriormente. Por motivo de los hallazgos, el ajustador de seguro le niega la cubierta del seguro de doble interes a la querellante [recurrida] Independientemente de que el auto hubiese sido chocado o no, ello no es razón [sic]para negarle la cubierta, porque el seguro es para cubrir el auto en las condiciones que este [sic].

7- Para el 2 de febrero de 2002, la querellante [recurrida] acude a las oficinas De [sic] Treinale [sic] Chrysler dealer vendedor para notifiarle [sic] que el vehículo [sic] había [sic] sido impactado antes de la venta y ese hecho nunca le fue notificado. La parte querellada [sic] El 15 de septiembre de 2002, por ultima [sic] vez, la querellante [recurrida] habla con una persona de nombre Sullivan en las oficinas del vendedor quien le dice que no puede puede ser que el vehículo [sic] hubiese sidi [sic] chocado.

8- El 23 de mayo del 2002, el tecinico [sic] automotriz del Departamento de Asuntos del Consumidor, Marcos Martines [sic] Vera, de la Oficina Regional de Ponce, realizo [sic] una inspección [sic] del vehículo [sic] y encontró [sic] lo siguiente, panel izquierdo, panel derecho y puerta derecha reflejan haber sido reparados.

9- También, [sic] el vehículo [sic] tiene cubre falta del parachoque delantero partido y el cross member abollado, panel izquierdo con abolladura y cristal del panel izquierdo roto. Estos daños ocurrieron con motivo del accidente que tubo [sic] la querellante [recurrida],

10- De una investigación [sic] realizada por la parte querellante [recurrida] se desprende que el vehículo [sic] vendido a ella fue inscrito el 26 de enero de 1998 en el Departamento de Transportación y Obras Publicas [sic] estatal nombre de Popular Leasing & Rental registro numero [sic]5371510. El 27 de noviembre de 2001 se procesó un traspaso de Popular Leasing And Rental y/o Popular Auto Auto [sic] a nombre de María C. Rivas Rivera. De esta información [sic] se concluye que el Dealer no inscribió [sic] el vehículo [sic] a su nombre antes de venderlo a la querellante [recurrida], ello en violación a las normas y reglamentos del Departamento de Transportación y Obras Publicas [sic]

11- El hecho de que el vehículo [sic] había [sic] sido chocado, reparado y que había [sic] pertenecido a una casa de Arrendamiento Financiero para alquiler no fue notificado a la querellante [recurrida]previo a la venta, hecho que era conocido por el querellado. La parte querellada H.V.P. Motors tenia [sic]conocimiento de los hechos y aun asi [sic] trato de negarlos y prefirió [sic] litigar la acción [sic] constituyendo ello a nuestro juicio temeridad. ”

Véase, Exhibit 1 del Apéndice.
En su consecuencia, el D.A.C.O. emitió Resolución el 19 de mayo de 2003, notificada el 20 de mayo de *586 2003, donde, entre otros extremos, declaró Con Lugar la querella instada y decretó la resolución del contrato de compraventa. Ordenó a HVP Motors y a Chrysler Credit pagar en forma solidaria a la recurrida la cantidad de $6,714.98 así como todas las cantidades que mensualmente la recurrida hubiera pagado a Chrysler Credit con posterioridad al 30 de enero de 2003 hasta la satisfacción del pago más los intereses legales a partir de la fecha de la Resolución emitida. Asimismo, relevó a la recurrida de continuar realizando los pagos a Chrysler Credit. A su vez, ordenó a Chrysler Credit y a HVP Motors para que en forma solidaria le reembolsaran a la recurrida la cantidad que pagó por el arreglo de la transmisión así como los honorarios de abogado.
Insatisfecho, HVP Motors presentó reconsideración, la cual fue denegada el 2 de junio de 2003, notificada en igual fecha.
Inconforme con dicho dictamen, HVP Motors y Chrysler Credit acuden a este Tribunal. El 15 de julio de 2003 emitimos Resolución ordenando a la parte recurrida mostrara causa por la cual no debíamos expedir el auto solicitado en cuanto al recurso KLRA-03-00471. Asimismo, ordenamos se expresara sobre el recurso KLRA-03-00470. Habiendo cumplido dicha parte con nuestra Orden, procedemos a resolver.
II
En el recurso KLRA-03-00470, VPH Motors plantea que incidió el D.A.C.O. al concluir que medió dolo al ocultarle a la recurrida “...de cómo fue el impacto del auto y de todas las piezas que le fueron sustituidas y/o reparadas. El dolo y engaño en este caso consiste en que el vendedor guardo silencio total sobre la magnitud de los daños del vehículoal emitir una Resolución que no estaba avalada por la prueba desfilada durante la vista administrativa; y al imponer el pago de honorarios de abogados a tenor con la Regla 44.1(d) de las de Procedimiento Civil, 32 L.P.R.A. Ap. II, R. 44.1.
Por su parte, Chrysler Credith en el recurso KLRA-03-00471, plantea que incidió el D.A.C.O. al concluir que había actuado de mala fe y que era solidariamente responsable por los actos alegadamente dolosos de HVP Motors, por no haber inspeccionado el vehículo en controversia antes del financiamiento.
III
La Ley Núm. 7 de 24 de septiembre de 1979, conocida como “Ley de Garantías de Vehículos de Motor”, 10 L.P.R.A. sec. 2051 et seq., se aprobó con el propósito de “velar porque los intereses de los consumidores sean salvaguardados frente a los intereses del manufacturero y el distribuidor o vendedor”. Art, 3, 10 L.P.R.A. sec. 2053. El Art. 13 del estatuto faculta al D.A.C.O. a adoptar reglamentación para implantar sus propósitos. 10 L. P.R.A. sec. 2063.
El 30 de septiembre de 1992, D.A.C.O., en el ejercicio de las facultades concedidas por la Ley Núm. 7, supra, promulgó el “Reglamento de Garantías de Vehículos de Motor”, Reglamento Núm. 4797, en adelante, el Reglamento. 10 R.P.R. § 250.1701 et seq.
El mismo tiene el propósito de “proteger adecuadamente a los consumidores en Puerto Rico y sus inversiones en la adquisición de vehículos de motor. Así mismo, asegurarle a todo consumidor que adquiera un vehículo de motor en Puerto Rico, que el mismo sirva los propósitos para los que fue adquirido, y que reúna las condiciones mínimas necesarias para garantizar la protección de su vida y propiedad. Además tiene como finalidad prevenir las prácticas ilícitas en la venta de vehículos de motor en Puerto Rico” 10 R.P.R. §250.1702.
Dicho Reglamento dispone que su interpretación deberá hacerse liberalmente a favor del consumidor. Id.
La Ley Núm. 330 de 2 de septiembre de 2000, conocida como “Ley Complementaria de Garantías de Vehículos de Motor”, 10 L.P.R.A. 2066 et seq., se creó, entre otros extremos, con el propósito de disponer *587 parámetros mínimos referentes al deber del manufacturero de ajustar los vehículos de motor a las garantías. Surge de la Exposición de Motivos de la Ley Núm. 330, supra, que la medida “pretende complementar la protección al consumidor otorgada por la Ley Núm. 7, supra, elevando a rango de legislación parámetros mínimos relativos al deber del manufacturero de ajustar los vehículos de motor a las garantías y el procedimiento a seguir cuando existe disconformidad de los vehículos de motor, así como sus consecuencias ”.
El Art. 2(f) del estatuto define el término compensación razonable por uso “como el número de millas atribuibles al consumidor hasta la fecha del acuerdo de conciliación (“settlement agreement“) multiplicado por el precio de compra del vehículo y dividido por cientoveinte mil (120,000), excepto que en el caso de un vehículo recreativo deberá ser dividido por sesenta mil (60,000)”. 10 L.P.R.A. sec. 2067.
IV
Conforme a nuestro ordenamiento jurídico, la existencia de un contrato se configura cuando concurren los siguientes elementos: (1) consentimiento de los contratantes, (2) objeto cierto que sea materia del contrato, (3) causa de la obligación que se establezca. Art. 1213 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3391; Master Concrete Corp. v. Fraya, 152 D.P.R._ (2000), 2000 J.T.S. 192; José Garriga Hijo, Inc. v. Cond. Marbella del Caribe Oeste, 143 D.P.R. 927 (1997); Quiñones López v. Manzano Posas, 141 D.P.R. 139 (1996).
El consentimiento se manifiesta por la aceptación de una oferta sobre la cosa y causa del negocio. Art. 1214 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3401; Vilá & Hnos., Inc. v. Owens Ill. de P.R., 117 D.P.R. 825, 834-835 (1986); Prods. Tommy Muñiz v. COPAN, 113 D.P.R. 517, 521 (1982).
El consentimiento prestado puede ser nulo cuando el mismo se ha producido por error, violencia, intimidación o dolo. Art. 1217 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3404; Colón v. Promo Motor Imports, Inc., 144 D.P.R. 659 (1997).
Existe dolo cuando con palabras o maquinaciones insidiosas de parte de uno de los contratantes, es inducido el otro a celebrar un contrato que sin ellas, no hubiera hecho. Art. 1221 del Código Civil de Puerto Rico, 31 L.P. R.A. sec. 3408. Es decir, el dolo puede cometerse mediante palabras o maquinaciones insidiosas o bien callando respecto a una condición esencial del contrato. Márquez v. Torres Campos, 111 D.P.R. 854, 871 (1982). Véanse, además, Colón v. Promo Motor Imports, Inc., supra; Acosta & Rodas, Inc. v. PRAICO, 112 D.P.R. 583, 617 (1982); Canales v. Pan American, 112 D.P.R. 329, 338-342 (1982); Miranda Soto v. Mena Eró, 109 D.P.R. 473, 478 (1980).
El dolo puede manifestarse en la contratación o en el curso de la consumación del contrato, cuando se omite consciente y voluntariamente cumplir con la obligación. Colón v. Promo Motor Imports, Inc., supra; Márquez v. Torres Campos, supra.
Contrario a lo intimado en el texto del Art. 1217, supra, no todo tipo de dolo produce la nulidad del contrato. Para que produzca la nulidad del contrato, el dolo tiene que ser grave y no meramente incidental, y no haber sido utilizado por ambas partes. Art. 1222 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3409. El tipo de dolo con características de gravedad se ha denominado como el dolo causante. Rivera v. Sucn. Díaz Luzunaris, 70 D.P.R. 181, 185 (1949). Es el que causa, motiva, sirve de ocasión y lleva a celebrar el contrato de modo tal que sin él no se hubiera otorgado el mismo. Colón v. Promo Motor Imports, Inc., supra.
Por otro lado, el dolo incidental sólo da lugar a la indemnización de los daños y perjuicios ocasionados. Art. 1222, supra; Id. Ello es así, ya que este tipo de dolo no tiene una influencia decisiva en la esencia de la obligación. Id.
El dolo, según se conoce, no se presume, sino que tiene que ser establecido por la parte que alega su *588 existencia. Id.; Véase, Canales v. Pan American, supra.
Ahora bien, como cualquier otro elemento mental, el mismo no tiene que ser establecido directamente, sino que puede inferirse de las circunstancias presentes en el caso particular. El Tribunal Supremo de Puerto Rico ha aclarado, en este sentido, que debe considerarse la preparación académica de las partes, así como su condición social y económica y las relaciones y el tipo de negocio en que se ocupan. El dolo puede surgir del conjunto y evolución de circunstancias y manejos engañosos, más que de un sólo hecho incidental. Colón v. Promo Motor Imports, Inc.; supra; Acosta & Rodas, Inc. v. PRAICO, supra; Miranda Soto v. Mena Eró, supra.
V
Por otro lado, la revisión judicial de decisiones administrativas suele circunscribirse a determinar si: (1) el remedio concedido por la agencia es el apropiado, (2) las determinaciones de hechos están sostenidas por evidencia sustancial en el expediente administrativo visto en su totalidad, y (3) las conclusiones de derecho son correctas. Los tribunales no deben intervenir en las determinaciones de hechos de un organismo administrativo, si están sostenidas por evidencia sustancial en el expediente administrativo. La evidencia sustancial es aquella relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. Misión Ind. de P.R. v. J.C.A., 145 D.P.R. 908 (1998).
La parte afectada por una decisión administrativa deberá convencer al tribunal de que la evidencia en la cual la agencia basó su determinación de hechos no es sustancial. Este debe demostrar que en el récord administrativo existe otra prueba que reduce o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no puede concluirse que la determinación de la agencia fue razonable. Id.
Al revisar las conclusiones de derecho de las agencias administrativas, el foro judicial debe considerar la experiencia y los conocimientos especializados que tiene el organismo administrativo sobre los asuntos que le han sido encomendados. Como se sabe, las conclusiones de derecho de la agencia, a diferencia de las determinaciones de hechos, pueden ser revisadas “en todos sus aspectos por el tribunal” sin sujeción a norma o criterio alguno. La Sección 2175 de la Ley Núm. 170 de 12 de agosto de 1988, según enmendada, conocida como “Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico”, 3 L.P.R.A. sec. 2175. Esto no significa que el tribunal puede descartar libremente las conclusiones e interpretaciones de la agencia sustituyendo el criterio de ésta por el propio. De ordinario, los tribunales deben deferir a las interpretaciones y conclusiones de los organismos administrativos. Misión Ind. P.R. v. J.C.A., supra. Esta deferencia responde al reconocimiento de que las agencias administrativas poseen vasta experiencia y conocimiento especializado y son instrumentos necesarios para la interpretación de la ley. T. JAC, Inc. v. Caguas Centrum Limited, 148 D.P.R. 70 (1999); Miranda v. C.E.E, 141 D.P.R. 775 (1996); Torres v. Starkist Caribe, Inc., 134 D.P.R. 1024 (1994); ARPE v. Ozares Pérez, 116 D.P.R. (1986); Molini & Vélez v. Negociado de Seguridad, 115 D.P.R. 183 (1984).
Sólo cuando la agencia haya actuado arbitraria o ilegalmente, o en abuso de su discreción, los tribunales apelativos intervendrán con la determinación administrativa. Rivera v. Supte. Policía de P.R., 146 D.P.R. 247 (1998); Murphy Bernabé v. Tribunal Superior, 103 D.P.R. 692 (1975).
VI
Dentro del marco jurídico antes enunciado, procedamos a resolver la controversia de autos.
Discutiremos en conjunto por estar relacionados el primer error planteado en el recurso KLRA-03-00470, así como el error planteado en el KLRA-03-00471. HVP Motors nos plantea que incidió el D.A.C.O. al determinar que ésta había cometido dolo al ocultarle a la recurrida “...de cómo fue el impacto del auto y de todas las piezas que le fueron sustituidas y/o reparadas. El dolo y engaño en este caso consiste en que el vendedor guardó silencio total sobre la magnitud de los daños del vehículo”. Arguye que el vehículo de motor *589 en controversia no fue impactado. Descansa su posición en el Informe de Investigación preparado por D.A.C.O.
Por su parte, Chrysler Credit plantea que incidió la agencia al determinar que había actuado de mala fe y que era solidariamente responsable de los actos dolosos por no haber inspeccionado el vehículo con anterioridad a conceder el financiamiento.
Comencemos señalando sobre el planteamiento de HVP Motors que el Informe de Investigación lee:

“La inspección a realizar es una visual. Mediante esta prueba podemos determinar las áreas impactadas alegadas por el querellante. En el caso ante nuestra consideración la unidad presenta lo siguiente: panel izquierdo refleja ser reparado, panel derecho reparado y puerta derecha reparada. El frente de la unidad refleja ser el original. Las reparaciones antes mencionadas son cosméticas y no reflejan ser reparaciones de un impacto mayor y sí de abolladuras. El próximo paso a seguir es subir la unidad en el pino. Mediante esta prueba podemos determinar si los compactos o otros componentes fueron afectados por impacto. En el caso ante nuestra consideración, una vez la unidad en el pino, ésta presenta lo siguiente: compactos en buen estado, cubre falta del para choque delantero partido y ‘cross member’ abollado. La parte querellante [recurrida] indico fsicj que los siguientes daños ocurrieron en su poder: panel izquierdo presenta abolladura, cubre falta del para choque delantero partido, cristal del panel izquierdo roto y ‘cross member’. ”

Véase, página 11 del Apéndice.
Se refleja de manera meridiana que el panel derecho y la puerta derecha habían sido reparadas previo a la venta del vehículo. La recurrida aceptó que la abolladura del izquierdo, el cubre falta del para choque delantero partido, el cristal del panel izquierdo roto y el “cross member” fueron daños ocasionados mientras el vehículo estaba en su poder. No vemos de donde HVP Motors deduce que el Informe de Investigación nada señala sobre que el vehículo había sido impactado previo a la compraventa.
El Art. 27.2 del Reglamento, supra, sobre garantías de vehículos de motor, requiere a todo vendedor de un vehículo de motor usado, el cual haya sido impactado y reparado posteriormente, indicarlo al consumidor verbalmente y notificarlo por escrito en el contrato de compraventa. Existe dolo cuando un vendedor de un vehículo no notifica por escrito al comprador si previo a la venta el auto ha sido objeto de alguna reparación. A tales efectos, HVP Motors venía obligado a informar verbalmente y por escrito en el contrato de compraventa que el vehículo a comprarse había sido accidentado y reparado.
Vemos, pues, que conforme a la reglamentación actual, el vendedor del vehículo estaba obligado a notificar que el vehículo de motor había sido reparado y pintado. Del contrato de compraventa y orden de compra en el caso de autos no se desprende que se informó dicha condición a la recurrida. Somos de opinión que lo anterior, sin que fueran notificadas dichas circunstancias al consumidor, dan base a la resolución del contrato por dolo. Reiteramos, nada surge del expediente que, al momento de suscribirse el contrato, se haya informado que el vehículo había sido chocado y reparado. No ofrecerle la información correcta privó al comprador de tener un conocimiento completo de todos los elementos relacionados al objeto y emitir un consentimiento informado.
Por otro lado, este Tribunal ha señalado en ocasiones anteriores que la gravedad del dolo no se mide por el valor del defecto que se ha ocultado, sino por su impacto en la formulación del consentimiento de la parte para el negocio. Somos de opinión que la circunstancia de si un vehículo ha sido chocado y reparado, de ordinario constituye una condición esencial para la celebración de este tipo de negocios. Es evidente, a nuestro juicio, que esta circunstancia incide de forma determinante en el valor y cualidades de un vehículo que se adquiere. Dada la rápida depreciación de este tipo de bienes, una persona que adquiere un automóvil no puede estar en posición de conocer si ha realizado un buen negocio, cuando ignora si el vehículo que ha comprado ha sido chocado y reparado. Bajo este escenario, no hablamos de dolo incidental y si de dolo grave.
*590 Aun en el supuesto de que no se hubiera actuado con el ánimo deliberado de engañar, como argumenta Chrysler Credit, el negocio celebrado en el presente caso podría ser anulado debido a la existencia de un error sobre la sustancia de la cosa objeto del contrato, lo que igualmente constituye un vicio de consentimiento. Veamos.
El Art. 1218 del Código Civil aclara, en este sentido, que un error tiene el efecto de invalidar el consentimiento cuando recae “sobre la sustancia de la cosa que fuere objeto del contrato, o sobre aquellas condiciones de la misma que principalmente hubiesen dado motivo a celebrarlo”. 31 L.P.R.A. sec. 3405; Girod Lube v. Ortiz Rolón, 94 D.P.R. 406, 414-415 (1967); Capó Caballero v. Ramos, 83 D.P.R. 650, 671 (1961); cf. Unisys v. Ramallo Brothers, 128 D.P.R. 842, 853 (1991).
Conforme hemos reseñado, la circunstancia de si un vehículo ha sido chocado, de ordinario, constituye una condición fundamental, y no meramente secundaria, en este tipo de negocio, que debe ser comunicada a todo comprador.
En el caso de autos, la parte recurrida incumplió con las obligaciones estatuidas en el ordenamiento jurídico prevaleciente. Consideramos que, en estas circunstancias, procede declarar la nulidad del contrato de compraventa, así como del contrato de financiamiento.
Por otro lado, Chrysler Credit alega que es contrario a derecho entender que responde solidariamente en este caso. No le asiste la razón.
Una vez perfeccionada una compraventa a plazos, el vendedor le cede a una entidad financiera su posición frente al comprador, a cambio del pago inmediato del precio. “El cesionario se subroga en los derechos del cedente y a la vez asume las obligaciones que éste tenga para con el comprador al momento de la cesión”. Universal Credit v. Tribunal Superior, 77 D.P.R. 574, 580, (1954). El cesionario responde de cualquier garantía que por ley o a virtud del contrato, el vendedor venga obligado a responder en favor del comprador. Ibid.
En Berríos v. Tito Zambrana Auto Inc., 123 DPR 317 (1989), el Tribunal Supremo expresó:
“...en la cesión de un contrato de “venta al por menor a plazos” (venta condicional), el cedente no queda liberado, porque en virtud de la Ley de Ventas a Plazos y Compañías de Financiamiento, el legislador expresamente dispuso que el vendedor retuviera su responsabilidad frente al comprador. Art. 209 (f) de la Ley Núm. 68, supra, 10 L.P.R.A. sec. 749 (f). Las obligaciones principales del vendedor en la compraventa son la entrega y saneamiento de la cosa vendida. Art. 1350 del Código Civil, 31 L.P.R.A. sec. 3801. Considerando estas características particulares, la figura creada por el legislador realmente constituye una cesión de contratos atípica o sui géneris. ” Véase, también, el Art. 202 85) de la misma ley, 10 L.P.R.A. sec. 742 (5).
A esos efectos, la Ley Núm. 68 de 19 de junio de 1964, según enmendada, conocida como “Ley de Ventas a Plazos y Compañías de Financiamiento”, 10 L.P.R.A. sec. 742 (5), dispone que:

“Todo contrato de ventas al por menor a plazos deberá contener el siguiente aviso:

Aviso al Cesionario-El cesionario que reciba o adquiera el presente contrato al por menor a plazos o un pagaré relacionado con éste, quedará sujeto en igualdad de condiciones a cualquier reclamación o defensa que el comprador pueda interponer en contra del vendedor. El cesionario del contrato tendrá derecho a presentar contra el vendedor todas las reclamaciones y defensas que el comprador pueda levantar contra el vendedor de los artículos o servicios. ”

Conforme a los principios antes esbozados, si bien es cierto que al efectuarse la cesión del contrato de *591 compraventa a Chrysler Credit, el dealer retuvo su obligación respecto al saneamiento de la cosa vendida, el cesionario, o sea, Chrysler Credit, responde al comprador del saneamiento por vicios ocultos. Dicha obligación se encuentra comprendida dentro de las obligaciones que éste asume al efectuarse la cesión. Berríos v. Tito Zambrana Auto Inc., supra. En su consecuencia, procede reclamación contra Chrysler Credit.
No obstante, y en cuanto al argumento de Chrysler Credit sobre la aplicación de la Ley Núm. 330, supra, la contraprestación a que tiene derecho la recurrida debe ser aquella dispuesto en el Art. 2(f) de la mencionada ley, a saber, el precio de compra menos la compensación razonable por uso.
Esta determinación, es cónsona con el ordenamiento jurídico prevaleciente. No podemos obviar que la recurrida no se vio privada del uso efectivo del vehículo de motor en controversia, toda vez que la naturaleza de los vicios del mismo no afectaba la utilidad del mismo.
En su consecuencia, y cónsona a la situación fáctica actual, es de aplicación la disposición del Reglamento que establece que, en los casos de resolución del contrato de vehículos en garantía, se indemnizará entregando el precio de compra menos la compensación razonable por uso.
Por tales motivos se devolverá el caso al D.A.C.O. a fin de que determine la cantidad a ser devuelta a la recurrida a tenor de la Ley Núm. 330, supra.
El segundo error planteado en el recurso KLRA-03-004470 va dirigido a cuestionar las determinaciones de hechos del foro administrativo. Sobre el particular, es necesario señalar que cuando un recurrente apunta un error en la apreciación de la prueba oral o que alguna determinación de hechos no está sostenida por la prueba y sea necesario recurrir a la prueba oral, dicha parte lo hará constar en moción separada presentada junto al escrito inicial de revisión. Regla 67 del Reglamento del Tribunal de Circuito de Apelaciones, 4 L.P.R.A. Ap. XXII-A, R. 67. La parte que recurre le compete así demostrarlo y la omisión de cumplir con la disposición reglamentaria no permite que adjudiquemos su planteamiento. En el caso de autos, HVP Motors incumplió con esta disposición reglamentaria, por lo que nos vemos imposibilitados de considerar su planteamiento. La transcripción de la prueba es imprescindible para entrar a adjudicar sus señalamientos.
El tercer señalamiento de error en el recurso KLRA-03-00470 versa sobre la imposición de honorarios de abogado. Sostiene HVP Motors no haber incurrido en temeridad al litigar el presente caso.
Al respecto, la Regla 44.1 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 44.1, establece, en su inciso (d) que [e]n caso en que cualquier parte o su abogado haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta.
Por su parte, la Regla 44.3(b), supra, R. 44.3 dispone, en lo pertinente:
“El tribunal también impondrá a la parte que haya procedido con temeridad el pago de interés al tipo [correspondiente] ... desde la radicación de la demanda, en todo caso de daños y perjuicios, ... y hasta la fecha en que se dicte la sentencia a computarse sobre la cuantía de la sentencia... ”.
La condena en honorarios de abogado e intereses bajo las disposiciones anteriores, ha expresado el Tribunal Supremo de Puerto Rico, es imperativa cuando el tribunal sentenciador concluye que una parte ha sido temeraria. Dicha determinación ha de inferirse del pronunciamiento del tribunal imponiendo la condena de honorarios de abogado y/o de intereses. Rivera Rodríguez v. Tiendas Pitusa, Inc., supra; Pérez v. Col. de Cirujanos Dentistas de P.R., 131 D.P.R. 545, 563 (1992).
*592 El propósito de la imposición de honorarios de abogado es sancionar al litigante perdidoso que por su temeridad, obstinación, contumacia e insistencia en una actitud frívola o desprovista de fundamento, obliga a la otra parte a asumir innecesariamente las molestias, gastos trabajo e inconveniencias de un pleito. Véanse, Fernández v. S.J. Cement, 118 D.P.R. 713, 718 (1987); Soto v. Lugo, 16 D.P.R. 444, 448 (1954).
El Tribunal Supremo de Puerto Rico ha expresado que la acción que amerita la imposición de este tipo de condena es cualquiera que haga necesario un pleito que se pudo evitar, que lo prolongue innecesariamente o que produzca la necesidad de que otra parte incurra en gestiones evitables. Véase, Rivera Rodríguez v. Tiendas Pitusa, Inc., supra.
No constituye temeridad cuando existe una discrepancia honesta en tomo al derecho aplicable o cuando se trata de una cuestión novel, no resuelta por el Tribunal Supremo. Soc. de Gananciales v. Royal Bank de P.R., 145 D.P.R. 178 1998); Rivera v. A & C Development Corp., 144 D.P.R. 450(1997).
El Tribunal de Primera Instancia goza de amplia discreción en este tipo de determinaciones. Véanse, Miranda v. E.L.A., 137 D.P.R. 700(1994); Ramírez v. Club Cala de Palmas, 123 D.P.R. 339(1989); Fernández v. San Juan Cement, 118 D.P.R. a la pág. 717; Raluán Corp. v. Feliciano, 111 D.P.R. 598 (1981). El Tribunal apelativo sólo intervendrá en este tipo de caso cuando el Tribunal de Primera Instancia hubiera abusado de su facultad. Ramos Báez v. Bossolo López, 143 D.P.R. 567(1997); Cotto Morales v. Ríos, 140 D.P.R. 604 (1996).
Al cuantificar los honorarios de abogado por temeridad, los tribunales pueden tomar en consideración factores tales como la naturaleza del litigio, las cuestiones de derecho envueltas en el caso, la cuantía en controversia, el tiempo invertido, los esfuerzos y actividad profesional que hayan tenido que desplegarse y la habilidad y reputación de los abogados en el caso. Blás v. Hosp. Guadalupe, 146 D.P.R. 267 (1998).
El factor determinante en dicha determinación, sin embargo, habrá de ser el grado o intensidad de la conducta temeraria o frívola. Blás v. Hosp. Guadalupe, supra; Corpak Art Printing v. Ramallo Brothers, 125 D.P.R. 724 (1990).
Un análisis ponderado del trámite procesal del caso de autos revela que el D.A.C.O. no abusó de su discreción al determinar que HVP Motors había sido temerarias en la litigación del caso.
VII
Por las razones anteriormente expuestas, se expiden los autos solicitados, se confirma el recurso KLRA-03-00470; y se modifica lo dispuesto en cuanto al recurso KLRA-03-00471 a los fines de disponer que de la compensación dispuesta para la parte recurrida se deduzca la cuantía razonablemente asociada al uso del vehículo. Se devuelve el caso al D.A.C.O. para procedimientos consistentes con esta Sentencia en cuanto a dicho recurso.
Así lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 2003 DTA 149
1. KLRA-02-00063, Juez Brau Ramírez, Juez Ponente.
2. Dicho artículo defíne el término compensación razonable por uso “como el número de millas atribuibles al consumidor hasta la fecha del acuerdo de conciliación (“settlement agreement”) multiplicado por el precio de compra del vehículo y dividido por cientoveinte mil (120,000), excepto que en el caso de un vehículo recreativo deberá ser dividido por sesenta mil (60,000)”. 10 L.P.R.A. sec. 2067.